UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
LUZ PIEDAD LOPEZ,

                     Plaintiff,

     -against-

EAST HAMPTON UNION FREE SCHOOL
DISTRICT,

                  Defendant.

----------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**
14-cv-1999 (ADS)(SIL)

<u>**APPEARANCES:**</u>

**The Law Office of Lawrence E. Kelly**
*Attorney for the Plaintiff*
11 Cedar Bay Court
Bayport, NY 11705
       By:    Lawrence E. Kelly, Esq., Of Counsel

**Devitt Spellman Barrett, LLP**
*Attorneys for the Defendants*
50 Route 111
Smithtown, NY 11787
       By:    David H. Arntsen, Esq.,
               Jeltje DeJong, Esq.,
               Joshua S Shteierman, Esq.,
               Kelly E Wright, Esq., Of Counsel

**SPATT, District Judge**:

The Plaintiff Luz Piedad Lopez (the "Plaintiff") brought this employment discrimination action against the Defendant East Hampton Union Free School District (the "Defendant" or the "District") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and 42 U.S.C. § 1983 ("Section 1983").

Presently before the Court a motion by the Defendant for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 56. For the following reasons, the Defendant's motion is granted in part, and denied in part.

# I. BACKGROUND

## A. The Relevant Facts

The following facts are drawn from the Defendant's 56.1 Statement, and the Plaintiff's 56.1 Counterstatement (together, the "Joint 56.1 Statement").

The Plaintiff worked for the Defendant from 2003 until June of 2012. The Defendant hired the Plaintiff in 2003 to work as a lunch monitor at an elementary school in the district, but sometimes, during the 2003 school year, the Plaintiff also worked as a substitute custodian when custodians were out sick or on vacation. Her lunch monitor shift started at 11:00 a.m., and ended at 2:30 p.m.; and when she worked as a substitute custodian, she worked from 3:00 p.m. until 11:00 p.m..

Before she worked as a substitute custodian for the District, the Plaintiff's only custodial experience consisted of assisting a person named "Ms. Ross" at the Ross School in 1996.

Although the Joint 56.1 Statement does not state whether the Plaintiff worked as a substitute custodian in 2004 or 2005, it does relate that she did not work as a substitute in 2006, 2007, or 2008. The Plaintiff first inquired into why she had not been asked to work as a substitute in 2008, when the Defendant informed her that she needed to submit a new application every year.

The Plaintiff submitted an application to work as a substitute custodian on March 13, 2009. She began work as a substitute custodian on September 4, 2009, and worked between two and three times per month.

When the District remodeled its high school in the 2010 school year, the Plaintiff was asked to substitute more frequently. The Plaintiff testified in her deposition that she worked about five days a week in 2010. That same year, the head custodian of the District's high school, LC Nelson ("Nelson") asked the Plaintiff to work as a substitute for eight straight months. During those eight

2

months, the Plaintiff worked the 6:00 a.m. to 3:00 p.m. shift, which was considered a desirable shift.

The Plaintiff admitted that it was sometimes difficult to finish her assignments because of the size of the assignments. Later she said that she always finished on time. The Plaintiff testified that she thought that a male co-worker, Michael Rivas, was assigned a larger area to clean.

On May 9, 2011, the Plaintiff applied for a full-time custodial position. Five individuals, including the Plaintiff, were interviewed for the position. Three of those five, including the Plaintiff, were invited back for a second interview. The Plaintiff and one other individual returned for a third-round interview. The other individual, whose name was Sam Fulford, ultimately received the position.

The District relies on the affidavit of Adam Fine ("Fine"), who was the principal of the District's high school, to support the statement that "Sam Fulford was selected for his position because of his superior prior work experience and because he was the better overall candidate[,] [and] [t]he candidates' race and gender played no role in this decision." (Def.'s 56.1 Statement at ¶ 17 (citing Def.'s Ex. I, Aff. of Adam Fine)). The Plaintiff contends that Fine's statements are subjective opinions, and that there is a question of fact as to whether gender or race played a role in the decision.

On June 20, 2011, the Plaintiff sent a letter to two members of the District's administration, expressing concern that she was not hired for the full time position, and calling into question the District's reasons. In the letter she attributed the following statement to Nelson: "The section in the building is [] one of the two biggest in the school and you won't have help and you have to set up for sports and you have to clean the section again after night English/Spanish classes and [] the

current person in the position sometimes doesn't have time to take lunch." (Def.'s Ex. J). The Plaintiff interpreted Nelson's statements to mean that she, as a woman, could not handle the job.

Approximately one month later, on August 22, 2011, the Plaintiff filed a complaint with the Equal Employment Opportunity Commission (the "EEOC"), alleging that the District discriminated against her based on her gender. The EEOC complaint did not allege racial discrimination.

On October 3, 2011, the Plaintiff applied for a custodial position at the District's middle school. The Plaintiff received the position, and began working as a Custodial Worker I at the middle school on November 15, 2011. The District did not condition her employment on her withdrawal of her EEOC complaint. The Plaintiff worked with six other custodians at the middle school. Three of those custodians were women.

The Defendant states that the District had to make nearly $3 million in cuts to comply with the State's 2% tax cap. The Plaintiff contends that this is in dispute, citing generally to "New York State law," for the proposition that the cap could have been bypassed with "voter approval."

On June 22, 2012, the Plaintiff was terminated from her position at the middle school. The Plaintiff was aware that two males, Angel Jimenez and Michael Rivas, were also terminated at that time. The Plaintiff contends that the fact that three Hispanics were terminated is further evidence of racial discrimination. The Plaintiff has maintained that the District affords preferential treatment to black men. In support of that contention, the Plaintiff cites to her own interrogatory responses, which are replete with hearsay. The Court does not consider these responses, because they are not admissible evidence. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."); *see also* FED. R. CIV. P. 56(e) (stating that documents submitted in support of and

against summary judgment "shall set forth such facts as would be *admissible in evidence.*" (emphasis added)). The Court also notes that, as discussed below, the Plaintiff's complaint makes no mention of racial discrimination.

After the 2011–2012 school year, Edwin R. Rowe, Eric Wolhoff, Frank Sokolowski, Steven P. Cohen, Patrick T. St. John, Michael Ritsi, and Lawrence Roberts, all males, were also terminated due to budgetary constraints. However, according to the Defendant's Exhibit P, none of those males worked as custodians. They worked as mail couriers, directors of facilities, classroom teachers, and paraprofessionals. Daniel Hartnett, also a male, had his workload reduced from full-time to half-time. Daniel Hartnett worked as a speech therapist. The District states that Sam Fulford was also terminated. The Plaintiff disputes that Fulford was terminated, but the evidence to which she cites does not support her contention that he was permitted to continue working after the 2011–2012 school year.

During her employment with the District, the Plaintiff worked with female custodians. They included Bernarda Beltre, Carmen R. Rodrigo, Martha C. Salazar, Alba Isaza, and Bonnie P. Hayes.

The Defendant states that "[n]o District administrator gave race as a reason for the District's employment decisions. [] Nelson never made any comments about the Plaintiff's gender." (Def.'s 56.1 Statement at ¶ 30 (internal citations omitted)). The Plaintiff again cites to her own responses to the Defendant's interrogatories, and broadly to "Plaintiff['s] deposition transcripts" to seemingly dispute this claim, though what the Plaintiff is attempting to contend is unclear.

On September 26, 2012, the District offered an open custodial position to the Plaintiff. The Defendant states that the position was instead offered to Fulford when the Plaintiff did not agree

to the terms of the position.  The Plaintiff contends that the offer was withdrawn when counsel for the Plaintiff contacted Kevin Seaman ("Seaman"), counsel to the Defendant.  The Plaintiff again cites broadly to "the Complaint and Interrogatory Responses and Deposition transcripts."  (Pl.'s 56.1 Counterstatement at ¶ 31).  The Court notes that the Plaintiff's deposition transcript only indicates that she did not speak with the District about the offer, and that her attorney instead spoke with the District.  However, a letter from Seaman to the EEOC states that while the District was prepared to offer the Plaintiff a new position, it expected that the Plaintiff's EEOC complaint would be withdrawn upon acceptance of that offer.  (Def.'s Ex. Q).

On December 30, 2013, the EEOC issued a right to sue letter to the Plaintiff.  The EEOC stated that it was "unable to conclude that the information obtained establishes violation of the statutes."  (Def.'s Ex. R).

## B.  Relevant Procedural History

The Plaintiff filed her complaint on March 28, 2014.  The complaint alleged five causes of action: Title VII discrimination based on the Plaintiff's gender; Title VII retaliation; first amendment retaliation pursuant to Section 1983; deprivation of equal protection pursuant to Section 1983; and violation of procedural due process pursuant to Section 1983.

The Defendant filed its motion for summary judgment on February 11, 2016.

## II. DISCUSSION

## A.  The Standard of Review

Under FED. R. CIV. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  When deciding a motion for summary judgment, "[t]he Court 'must draw all reasonable inferences and resolve all ambiguities in favor of the non–moving party.'"  *Castle Rock*

*Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998) (quoting *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1998)).

"[A]t the summary judgment stage the judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 173–74 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (internal quotation marks omitted)). In other words, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Barrows v. Seneca Foods Corp.,* 512 F. App'x 115, 117 (2d Cir. 2013) (quoting *Redd,* 678 F.3d at 174 (internal quotation marks omitted)). The Court should not attempt to resolve issues of fact, but rather "assess whether there are any factual issues to be tried." *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.,* 677 F.3d 109, 119 (2d Cir. 2012).

The movant has the burden of demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). If a nonmoving party fails to make a sufficient showing on an essential element of their case where they will have the burden of proof, then summary judgment is appropriate. *Id.* at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. *Liberty Lobby,* 477 U.S. at 249. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for that party. *See Dawson v. Cty. of Westchester,* 373 F.3d 265, 272 (2d Cir. 2004).

**B. As to the Plaintiff's Title VII Discrimination Claim**

Title VII prohibits various forms of employment discrimination on the basis of race, color, religion, sex, or national origin. Title VII prohibits both intentional discrimination—known as disparate treatment—and unintentional discrimination practices which have a disproportionately adverse effect on a protected class—known as disparate impact. *See Ricci v. DeStefano,* 557 U.S. 557, 576, 129 S. Ct. 2658, 2672, 174 L. Ed. 2d 490 (2009).

The arguments from each party illustrate a possible misunderstanding of Title VII law. The Plaintiff's complaint explicitly states that her Title VII claim is for "disparate impact." (Complaint at ¶ 70). The Plaintiff lists several statistics in her complaint, which are often used in support of charges of disparate impact. The Plaintiff only uses the word "intentional" once in her entire complaint—and it is used in reference to her First Amendment retaliation claim. The analysis for a disparate impact claim is distinct from that of intentional discrimination.

A claim of disparate impact focuses on the hiring policies and practices of an employer. *Ricci,* 557 U.S. at 578 ("[A] plaintiff establishes a prima facie violation by showing that an employer uses 'a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin.' " (quoting 42 U.S.C. § 2000e–2(k)(1)(A)(i)); see also *Malave v. Potter,* 320 F.3d 321, 325 (2d Cir. 2003) ("To make out a prima facie case of disparate impact, a plaintiff must (1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two." (internal citations omitted)).

A claim of discriminatory failure-to-hire focuses on the acts against the individual plaintiff. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (stating that a prima facie case of discriminatory failure-to-hire is established by showing that (1) [she] is a member of a protected class, (2) [she] was qualified for the job for which [she] applied, (3) [she] was denied the job, and

(4) the denial occurred under circumstances that give rise to an inference of invidious discrimination.")

Despite the fact that the Plaintiff's complaint alleges disparate impact, both the Plaintiff and the Defendant analyzed the Plaintiff's Title VII discrimination claim as one of intentional discrimination. Neither of the 56.1 Statements mention any policy or practice. The Court will therefore analyze the Plaintiff's Title VII discrimination claim as one for intentional discrimination or disparate treatment.

Discriminatory failure-to-hire claims (as well as disparate impact claims) are analyzed under the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), burden shifting framework. Under that test:

> a plaintiff complaining of a discriminatory failure to hire must first make out a *prima facie* case of discrimination by showing that (1) [she] is a member of a protected class, (2) [she] was qualified for the job for which [she] applied, (3) [she] was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination. Once the plaintiff has made such a *prima facie* showing, the burden shifts to the employer to come forward with a nondiscriminatory reason for the decision not to hire the plaintiff. If the employer articulates such a reason, the plaintiff is given an opportunity to adduce admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proffered reason is pretext for an impermissible motivation.

*Vivenzio*, 611 F.3d at 106.

By its silence on the element, the Defendant does not dispute that the Plaintiff, as a female, is a member of a protected class. Females are a protected class. *Leibovitz v. N.Y. City Transit Auth.*, 252 F.3d 179, 186 (2d Cir. 2001). The Defendant explicitly "does not dispute that Ms. Lopez was qualified and performed well at the interviews" for the job. (Def.'s Mem. of Law at 11). It is undisputed that the Plaintiff did not receive the job. Therefore, the Court need only analyze whether the denial occurred under circumstances giving rise to an inference of discrimination.

**1.  As to whether the denial occurred under circumstances giving rise to an inference of discrimination**

The Plaintiff's burden at this stage is to prove that "the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." *James v. New York Racing Ass'n.,* 233 F.3d 149, 156 (2d Cir. 2000); *see also Schnabel v. Abramson,* 232 F.3d 83, 90 (2d Cir. 2000) (courts should examine the entire record to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff") (internal citations and quotation marks omitted)). To defeat the motion for summary judgment the Plaintiff "must present evidence sufficient to allow a rational factfinder to infer that the employer was actually motivated in whole or in part by . . . discrimination." *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir. 1997).

"[T]rial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue." *Chertkova v. Conn. Gen. Life. Ins. Co.,* 92 F.3d 81, 87 (2d Cir. 1996) (internal citations omitted).  "Since it is rare indeed to find in an employer's records proof that a personnel decision was made for a discriminatory reason, whatever other relevant . . . materials are before the district court must be carefully scrutinized for circumstantial evidence that could support an inference of discrimination." *Id.*

To raise an inference of discrimination, a plaintiff must show that her employer "treated h[er] less favorably than a similarly situated employee outside h[er] protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 95 (2d Cir. 1999); *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 63 (2d Cir. 1997).  The comparable employee(s) "must be similarly situated in all material respects—not in all respects."

*McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (citing and quoting *Shumway*, 118 F.3d at 64) (internal quotation marks and emphasis omitted).

Here, the evidence shows that Fulford received the full-time job for which the Plaintiff was turned down in May 2011. Fulford is a male, and the Plaintiff is a female.

The Defendant argues that Fulford was more qualified than the Plaintiff. First on that point, the Court notes that there is nothing objective in the Defendant's 56.1 Statement that lends that statement credence. The Defendant cites to the affidavit of Fine, who makes a blanket claim that "Fulford was selected for the position because of his extensive and superior prior work experience and because the interview committee *felt* he was the better candidate." (Def.'s Ex. I at ¶ 10 (italics added)). The Defendant does not provide evidence for the Court to compare Fulford's experience or qualifications with that of the Plaintiff.

As "[t]he movant has the burden of demonstrating the absence of genuine issues of material fact," *Celotex,* 477 U.S. at 323, the Court cannot say that the Defendant has met its burden here. It is not clear to the Court that there does not exist a question of material fact as to whether the Plaintiff was similarly situated in all material aspects to Fulford. With the minimal information before the Court, it appears that they were similar in that they both had custodial experience.

Accordingly, the Court finds a triable issue regarding the discriminatory inference element of Plaintiff's *prima facie* case.

### 2. As to the Defendant's Proffered Legitimate Non–discriminatory Reasons

The Defendant argues that it is nevertheless entitled to summary judgment because it has articulated legitimate, non-discriminatory reasons for not hiring the Plaintiff. In support of this argument, the District merely restates its conclusory statement that Fulford was more qualified. The Defendant dedicates an entire page explaining why the Plaintiff's 56.1 Statement is improper,

and that the Court must focus on the 56.1 Statements. However, nowhere in the Joint 56.1 Statements does it explain how or even if Fulford was more qualified. The Defendant's 56.1 Statement merely comments that he had "superior work experience." This is conclusory and insufficient.

Therefore, the Court finds that a question of fact exists as to whether the Defendant had legitimate and non-discriminatory reasons for not hiring the Plaintiff. Accordingly, the Court denies the Defendant's motion for summary judgment pursuant to Rule 56 on the Plaintiff's Title VII discrimination claim.

### 3. As to Claims Regarding Racial Discrimination Under Title VII

The Defendant argues that the Plaintiff should not be permitted to bring any claims of racial discrimination because she did not raise them in her EEOC complaint. The Plaintiff did not respond to these arguments in any meaningful way, and the Court notes that the Plaintiff did not allege racial discrimination in her complaint. As the Plaintiff has not alleged racial discrimination under Title VII, the Court need not address this argument.

### 4. As to Whether the Plaintiff Can Include Allegations Relating to Her Termination In Her Discrimination Claim

The Defendant argues that the Plaintiff should not be permitted to include allegations related to her termination in her discrimination claim because those allegations are not reasonably related to the charges in her EEOC complaint. It is unclear to the Court why the Defendant felt compelled to argue this point, because just as the Plaintiff did not allege racial discrimination in her complaint, the Plaintiff did not allege in her complaint that her termination was the result of discrimination. However, she has alleged that it was the result of retaliation. As discussed below, allegations of retaliation that relate to the original charges of discrimination are, by their very nature, reasonably related. It is not clear from the Defendant's arguments whether the Defendant

seeks to foreclose the Plaintiff from making any arguments about her termination, or whether it seeks to solely foreclose those arguments in relation to charges of discrimination. However, evidence of the Plaintiff's termination will be introduced at trial to support her retaliation claim, and therefore the Court will consider whether those same facts can be used to support her discrimination claim.

It is well-settled that prior to bringing suit under Title VII, an "employee must timely exhaust the administrative remedies at h[er] disposal." *Belgrave v. Pena,* 254 F.3d 384, 386 (2d Cir. 2001) (per curiam). In order to exhaust administrative remedies for a Title VII claim, a plaintiff must raise the claim in a written EEOC complaint in compliance with regulations promulgated by the EEOC. *Id.*

Claims not raised in an EEOC complaint, however, may still be brought in federal court if they are "reasonably related" to the claims asserted in the EEOC complaint. *Mathirampuzha v. Potter,* 548 F.3d 70, 76–77 (2d Cir. 2008).

A claim is "reasonably related" to conduct alleged in an EEOC complaint if: (1) "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," (2) the claim alleges "retaliation by an employer against an employee for filing an EEOC charge," or (3) the claim alleges "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 83 n.6 (2d Cir. 2001) (quoting *Butts v. City of New York Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1402–03 (2d Cir. 1993)).

Here, the Court finds that the Plaintiff's termination was reasonably related to her EEOC complaint. Certainly, if the EEOC came to investigate whether the District failed to hire her for reasons of her gender, the EEOC would also look into whether the District fired her because of her

gender. *See, e.g, Holtz*, 258 F.3d at 84 ("[I]t would have been "reasonable to suspect that the

EEOC, in investigating [the plaintiff's] complaint of failure to train because of age, would have

assessed [the defendant's] promotion and transfer policies." (internal citations and quotation marks

omitted)). Furthermore, it is related to her charge of retaliation, and a continuing violation of the

discrimination that she alleged in her complaint. While a plaintiff may not rely on the continuing

violation theory unless she asserted that theory in her administrative proceedings, *Fitzgerald v.

Henderson*, 251 F.3d 345, 360 (2d Cir. 2001) (citing *Miller v. International Telephone &

Telegraph Corp.,* 755 F.2d at 25), the Plaintiff did that here. In her EEOC complaint, the Plaintiff

said that over the course of a year, four males had been selected for full-time positions over her,

and that the specific instance detailed in her complaint was an example of the District's continued

practice of affording men preferential treatment.

Accordingly, the Court finds that the Plaintiff's termination is reasonably related to her

EEOC complaint, and can therefore be used to support her gender discrimination claim.

### i. As to whether the Plaintiff has Presented a *Prima Facie* Case of Gender Discrimination Related to Her 2012 termination

Again, the Defendant has not met its burden in demonstrating that no issue of material fact

exists as to whether the Plaintiff was terminated under circumstances giving rise to an inference

of discrimination. As stated above, a plaintiff can show that a termination occurred under

circumstances giving rose to an inference of discrimination by showing that similarly situated

individuals outside of the plaintiff's protected class were treated differently. There is evidence

that male custodians were not terminated. There are no facts before the Court as to whether these

male custodians were similarly situated. Although it is the Plaintiff's burden to prove a prima

facie case, it is the Defendant's burden here to show that there is no issue of material fact as to

whether they were similarly situated. As the Court cannot say that there is no issue of material fact, the Court denies the Defendant's motion on that basis.

The Defendant argues that the gender discrimination allegations should be disregarded nevertheless because the District had legitimate non-discriminatory reasons for terminating the Plaintiff—namely, that the Disttrict had to make up for a budget shortfall. Assuming that the District had to make up the difference in the budget shortfall, the Court is unable to conduct any analysis about the terminations. The Defendant does not provide evidence as to how many custodians had been on the staff prior to the reduction in force; how many were terminated; and whether those who were terminated were similarly situated in all material aspects.

Accordingly, the Defendant's motion for summary judgment on the Plaintiff's gender discrimination claim as it relates to her termination is denied.

## C. As to the Plaintiff's Title VII Retaliation Claim

Retaliation claims under Title VII are also assessed using the burden-shifting framework laid out in *McDonell Douglas*, 411 U.S. 792. *See Summa v. Hofstra Univ.,* 708 F.3d 115, 125 (2d Cir. 2013) ("The burden-shifting framework laid out in *McDonnell Douglas . . .* governs retaliation claims under [] Title VII") (citing *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 609 (2d Cir. 2006)).

In order to establish a *prima facie* case of retaliation, a plaintiff must establish "(1) she engaged in protected activity; (2) the employer was aware of this activity; (3) the employee suffered a materially adverse employment action; and (4) there was a causal connection between the alleged adverse action and the protected activity." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.,* 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (quoting *Lore v. City of Syracuse,* 670 F.3d 127, 157 (2d Cir. 2012)); *see also Summa,* 708 F.3d at 125; *Schiano,* 445 F.3d

at 608. In order to establish this causal connection, a plaintiff must allege (1) direct proof of retaliatory animus directed against the plaintiff; (2) disparate treatment of similarly situated employees; or (3) that the retaliatory action occurred close in time to the protected activities. *DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 115 (2d Cir. 1987).

"The burden at the summary judgment stage for Plaintiff is minimal and *de minimis,* and the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 221 (E.D.N.Y. 2014) (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005))).

Protected activities under Title VII include both "opposing discrimination proscribed by the statute and . . . participating in Title VII proceedings." *Jute,* 420 F.3d at 173; *see also Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d Cir. 2011); *Hicks v. Baines*, 593 F.3d 159, 161–62 (2d Cir. 2010).

The District concedes the first three elements, but argues that they are entitled to summary judgment because there is no question of material fact as to whether there was a causal connection. Primarily, the District points to the fact that the Plaintiff was hired for a new position after she filed her EEOC complaint, and was not asked to withdraw it.

However, the Defendant ignores direct proof of retaliatory animus. After the Plaintiff was terminated, the District sent a letter to the New York EEOC office stating that the Plaintiff could return to the District in a full-time position *if* she withdrew her EEOC complaint. (*See* Def.'s Ex. Q). While the letter did not make it an explicit requirement, it did say that if the Plaintiff received a job, the District expected that the EEOC complaint would be withdrawn. Conversely, the letter

stated that if the resolution was not satisfactory to the Plaintiff, "the pending matter will, of course, survive." (*Id.*). In the Court's view, this communicated to the Plaintiff and any other employees seeking to file EEOC complaints that filing such complaints would jeopardize their positions, and withdrawing such complaints would be rewarded. The Court finds that this is sufficient evidence of retaliation for a jury to consider. The fact that the Plaintiff received a job after she filed her EEOC complaint does not defeat the Plaintiff's Title VII retaliation claim as a matter of law. The fact that the District fired her and then offered her a new job with the expectation that the complaint would be withdrawn makes this an unclear issue.

Accordingly, the Defendant's motion for summary judgment pursuant to Rule 56 dismissing the Plaintiff's Title VII retaliation claim is denied.

### D. As to the Plaintiff's Section 1983 Claims

#### 1. Section 1983 Generally

42 U.S.C. § 1983 provides, in relevant part, that "any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, is liable to the injured party for damages."

To state a § 1983 claim, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law"; and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Section 1983 does not create any independent substantive right, but rather is a vehicle to "redress . . . the deprivation of [federal] rights established

elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999); *see also Rosa R. v. Connelly*, 889 F.2d 435, 440 (2d Cir. 1989).

### 2. 1983 Claims Against Municipalities, namely, "*Monell* Claims"

Here, the sole Defendant is a municipal organization. It is well-established that neither a municipal organization nor "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978). However, section 1983 "extends liability to a municipal organization where . . . the policies or customs it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). "Municipal liability may also be premised on a failure to train employees when inadequate training 'reflects deliberate indifference to . . . constitutional rights.' " *Okin v. Village of Cornwall–On–Hudson Police Dept.,* 577 F.3d 415, 440 (2d Cir. 2009) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392, 109 S. Ct. 1197, 1206, 103 L. Ed. 2d 412 (1989)).

To prevail on a Section 1983 claim against a municipality, a plaintiff must show "that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 60, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011)); *see also Monell*, 436 U.S. at 690–91 ("[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels").

A plaintiff can establish the existence of a municipal policy or custom by showing:

(1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which

constructive knowledge and acquiescence can be implied on the part of the policy making officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with the municipal employees.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (citations omitted).

Therefore, in order to plead any of the following Section 1983 claims, the Plaintiff must show that there are sufficient facts to support submitting them as *Monell* claims to a jury.

### a. As to the Plaintiff's First Amendment Retaliation Claim

The Defendant argues that there are no remaining questions of material fact regarding the Plaintiff's First Amendment retaliation claim because she did not speak on a matter of public concern; there was no connection between her EEOC charge and her termination; and the Plaintiff was hired for a full time position after her EEOC complaint. The Defendant cites no case law in support of any of these contentions, and the Court does not agree.

The Second Circuit has "described the elements of a First Amendment retaliation claim in several ways, depending on the factual context." *Williams v. Town of Greenburgh,* 535 F.3d 71, 76 (2d Cir. 2008). Where, as here, a public employee brings retaliation claims based on the First Amendment, the Plaintiff must prove that: "(1) [she] engaged in constitutionally protected speech because [she] spoke as [a] citizen on a matter of public concern; (2) [she] suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." *Skehan v. Village of Mamaroneck,* 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon,* 531 F.3d 138, 140 (2d Cir. 2008).

However, the Defendant may still "escape liability if [it] can demonstrate that either (1) the [D]efendant would have taken the same adverse action against the [P]laintiff regardless of the [P]laintiff's speech; or (2) the [P]laintiff's expression was likely to disrupt the government's activities and that the harm caused by the disruption outweighs the value of the plaintiff's

expression." *Skehan,* 465 F.3d at 106. The latter is known as the "*Pickering* balancing test" and is a question of law for the Court. *See Cobb v. Pozzi,* 363 F.3d 89, 102 (2d Cir. 2004) (referring to *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S .Ct. 1731, 20 L. Ed. 2d 811 (1968)). Even if the government prevails on the *Pickering* test, plaintiff may still succeed by showing that the adverse action was in fact motivated by retaliation and not by any fear of a resultant disruption. *See Reuland v. Hynes,* 460 F.3d 409, 415 (2d Cir. 2006). The Defendant did not argue that it was entitled to summary judgment based on the *Pickering* test.

Here, the Plaintiff was clearly engaged in constitutionally protected speech by complaining about gender discrimination. *See Konits v. Valley Stream Cent. High School Dist.,* 394 F.3d 121, 125 (2d Cir. 2005) ("Gender discrimination in employment is without doubt a matter of public concern. Indeed, we have held repeatedly that when a public employee's speech regards the existence of discrimination in the workplace, such speech is a matter of public concern.") (citing *Flamm v. Am. Ass'n of Univ. Women,* 201 F.3d 144, 150 (2d Cir. 2000) ("Gender discrimination is a problem of constitutional dimension, and the efforts ... to combat it clearly relate to a matter of public concern.")); *Brown v. City of Syracuse,* No. 5:01–CV–1523 (FJS/DEP), 2008 WL 5451020, at *3 (N.D.N.Y. Dec. 31, 2008) ("The Second Circuit has permitted a First Amendment retaliation claim based on the filing of discrimination complaints." (citing *Washington v. Cty. of Rockland,* 373 F.3d 310, 320 (2d Cir. 2004)).

Furthermore, as discussed above, the Court believes there is an issue of fact as to whether the Plaintiff's EEOC complaint was a motivating factor in her termination. The Plaintiff has presented more than a mere scintilla of evidence by providing the Court with the letter from the District offering the Plaintiff a new job on the condition that she withdraw her complaint.

As the Court already found that the Defendant has not sufficiently demonstrated that there is no issue of material fact as to whether it terminated the Plaintiff for legitimate, non-discriminatory reasons, the Court similarly finds that there are issues of material fact as to whether the District would have terminated the Plaintiff regardless of her EEOC complaint.

Furthermore, the Court disagrees with the Defendant's contention that the Plaintiff has not presented any facts to support a *Monell* violation. As stated above, a plaintiff can establish a custom or policy by showing that a policymaker with final decision-making authority took action that lead to the deprivation of the Plaintiff's rights. The undisputed facts state that the District terminated the Plaintiff; and the Superintendent of Schools of the District sent the Plaintiff the letter that informed her of her termination. It is not clear from the facts before the Court who is the final decision-maker in the District. "[The Plaintiff's] [S]ection 1983 claim against the School District may stand if it is determined that [] [] the superintendent[] has final policy making activity attributable to the School District." *Tekula v. Bayport-Blue Point Sch. Dist.*, 295 F. Supp. 2d 224, 234 (E.D.N.Y. 2003) (Spatt, J.); see also *Solomon v. Southampton U.F.S.D.*, No. CV 08-4822 SJF ARL, 2010 WL 3780696, at *5 (E.D.N.Y. June 24, 2010) (stating that superintendent may be final decision maker of school district), *report and recommendation adopted*, No. 08-CV-4822 SJF ARL, 2010 WL 3780976 (E.D.N.Y. Sept. 17, 2010).

Even if the Court were to find that the superintendent is not the final decision maker in the District, the undisputed facts impute the decision to terminate the Plaintiff to the District itself. A decision made by an administrative body of a municipality would qualify as official policy. "Even one episode of illegal retaliation may establish municipal liability under § 1983 if ordered by a person whose edicts or acts represent official city policy." *Gronowski v. Spencer*, 424 F.3d 285, 296 (2d Cir. 2005).

**b. As to the Plaintiff's Procedural Due Process Claim**

The Defendant argues that the Plaintiff cannot prove a Section 1983 procedural due process claim because she has not presented any evidence that she had a property interest in her position. On this point, the Court agrees.

In order to "plead a violation of procedural due process, . . . a plaintiff must first identify a property right, second show that the government has deprived him of that right, and third show that the deprivation was effected without due process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (internal alteration, emphasis, and internal citations omitted); *see also Chrebet v. Cty. of Nassau*, 24 F. Supp. 3d 236, 244 (E.D.N.Y. 2014) (same), *aff'd*, 606 F. App'x 15 (2d Cir. 2015). The Second Circuit teaches that "[t]he threshold issue is always whether the plaintiff has a property . . . interest protected by the Constitution." *Morales v. New York*, 22 F. Supp. 3d 256, 276 (S.D.N.Y. 2014) (quoting *Narumanchi v. Bd. of Trs.*, 850 F.2d 70, 72 (2d Cir. 1988)). "Such property interests cannot be found on the face of the Constitution, but rather 'are created, and their dimensions are defined by, existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits.'" *Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012) (internal alterations omitted) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)).

"An employee has a property interest in his or her position only where he or she cannot be discharged in the absence of good cause." *Roche v. O'Meara*, 175 F. Supp. 2d 276, 283 (D. Conn. 2001) (citing *Moffit v. Town of Brookfield*, 950 F.2d 880 (2d Cir. 1991); *Stein v. Bd. of the City of N.Y.*, 792 F.2d 13 (2d Cir. 1986)).

The Plaintiff has not presented any evidence that she had a property interest in her custodial position, "*e.g.*, a collective bargaining agreement, a contract, or an engagement letter which would

vest a right or interest that requires due process protection." *Bryant v. S. Country Cent. Sch. Dist.*, No. 214CV5621(DRH)(ARL), 2017 WL 1216553, at *18 (E.D.N.Y. Mar. 31, 2017); *see also Perry v. Sindermann,* 408 U.S. 593, 599, 92 S. Ct. 2694, 2698–99, 33 L. Ed. 2d 570 (1972) (stating that a lack of formal contractual or tenure security in continued employment as a teacher is "highly relevant" to procedural due process claim). "[A]n at-will government employee . . . generally has no [procedural due process] claim based on the Constitution at all." *Waters v. Churchill,* 511 U.S. 661, 679, 114 S. Ct. 1878, 1890, 128 L. Ed. 2d 686 (1994); *see also Luck v. Mazzone,* 52 F.3d 475, 477 (2d Cir. 1995). The Plaintiff has not presented any legal authority to support her contention that she had a property interest in her custodial position, nor has the Court found any. Therefore, no rational fact-finder could find in the Plaintiff's favor on her procedural due process claim.

Accordingly, the Defendant's motion for summary judgment dismissing the Plaintiff's Section 1983 procedural due process claim pursuant to Rule 56 is granted.

### c. As to the Plaintiff's Equal Protection Claim

The Defendant contends that the Plaintiff's equal protection claim fails for the same reasons that it argued that her Title VII discrimination claim failed. The Court finds that the Plaintiff's equal protection claim survives the Defendant's motion for the same reasons that her Title VII discrimination claim also has survived.

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges." *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). " Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of [] [] the Equal Protection Clause . . . ." *Patterson v. Cty. of Oneida,*

*N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (citing *Jemmott v. Coughlin,* 85 F.3d 61, 67 (2d Cir. 1996) ("[W]hen § 1983 is used as a parallel remedy with Title VII in a discrimination suit, as it is here, the elements of the substantive cause of action are the same under both statutes."); *Sorlucco v. New York City Police Department,* 888 F.2d 4, 6–7 (2d Cir. 1989) (same) (further internal citations omitted)).

"Title VII claims for disparate treatment parallel the equal protection claims brought under § 1983. The elements of one are generally the same as the elements of the other and the two must stand or fall together." *Demoret v. Zegarelli,* 451 F.3d 140, 153 (2d Cir. 2006) (quoting *Feingold v. New York,* 366 F.3d 138, 159 (2d Cir. 2004) (internal quotation marks omitted)). "[T]he difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals." *Id.* at 149

For the same reasons that the Court finds that there are triable issues of fact relating to the Plaintiff's Title VII discrimination claim, the Court finds that there are triable issues of fact relating to the Plaintiff's Section 1983 Equal Protection claim. *See, e.g, Demoret*, 451 at 153 (dismissing Title VII claims based on the Court's analysis of the plaintiff's Section 1983 claims). The Court finds that as the undisputed facts show that the Plaintiff was terminated by the District, and informed of that decision by the superintendent of the district, the Plaintiff has presented sufficient evidence to survive a motion for summary judgment on her *Monell* claim.

Accordingly, the Defendant's motion for summary judgment dismissing the Plaintiff's Section 1983 equal protection claim is denied.

### III. CONCLUSION

Accordingly, for the reasons stated above, the Defendant's motion for summary judgment dismissing the Plaintiff's claims is granted in part and denied in part. It is granted to the extent

that the Plaintiff's Section 1983 procedural due process claim is dismissed. It is denied with regard to the following claims made by the Plaintiff: the Title VII discrimination claim; the Title VII retaliation claim; the Section 1983 First Amendment retaliation claim; and the Section 1983 equal protection claim, as each of these claims have triable issues of fact.

As directed by United States Magistrate Judge Steven I. Locke, the parties are to notify Judge Locke of this Court's decision within ten days of the entry of the Order.


It is **SO ORDERED:**

Dated: Central Islip, New York

May 20, 2017

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge